**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No.:

**GRACE BROTHERS, LTD.,**
**BENEDICTE M. WIRTZ, as Trustee of, BENEDICTE M. WIRTZ DECLARATION OF TRUST**
**DATED 10/26/94, and**
**RICHARD R. CALLAHAN JR., as Trustee of, RICHARD R. CALLAHAN JR.**
**DECLARATION OF TRUST DATED 10/26/94,**

      **Plaintiffs,**

**v.**

**PETER G. FUTRO,**
**RANGELEY CORPORATION, and**
**FUTRO & ASSOCIATES, P.C.,**

      **Defendants.**

---

## COMPLAINT

---

Plaintiffs Grace Brothers, Ltd., Benedicte M. Wirtz, as Trustee of Benedicte M.

Wirtz Declaration of Trust Dated 10/26/94, and Richard R. Callahan Jr., as Trustee of

Richard R. Callahan Jr. Declaration of Trust Dated 10/26/94 (collectively "Plaintiffs") seek

to recover damages they incurred when they were unable to resell stock into the public

market, which they purchased in transactions that involved Defendants Peter G. Futro,

Rangeley Corporation and Futro & Associates, P.C. (collectively "Defendants").  Plaintiffs

would not have been made to suffer damages totaling almost $750,000.00 had

Defendants, who are now the subject in a Federal Government criminal investigation, not

misrepresented and omitted material facts during the negotiations related to the sale of that

stock to Plaintiffs.  Consequently, Plaintiffs state for their Complaint as follows:

**PARTIES, JURISDICTION AND VENUE**

1.      Plaintiff Grace Brothers, Ltd. (hereinafter "Grace Brothers") is an Illinois

Limited Partnership whose principal place of business is in Evanston Illinois.

2.      Plaintiff Benedicte M. Wirtz as Trustee of the Benedicte M. Wirtz

Declaration of Trust Dated 10/26/94 (hereinafter the "Wirtz Trust") is the Trustee of the

Wirtz Trust.

3.      Plaintiff Richard R. Callahan Jr. as Trustee of Richard R. Callahan Jr.

Declaration of Trust Dated 10/26/94 (hereinafter the "Callahan Trust") is the Trustee of the

Callahan Trust.

4.      All of the Defendants in this action were affiliated with one another between

at least September 2004 and May 6, 2006 (hereinafter the "Relevant Time Period").

5.      Defendant Peter G. Futro (hereinafter "Futro"), a citizen of Colorado, is an

attorney.

6.      During the Relevant Time Period, Futro was the president and director of

Defendant Rangeley Corporation (hereinafter "Rangeley"), a company that Futro

incorporated in the British Virgin Islands.

7.      Futro is currently still the president and director of Rangeley, whose

principal business is investments.

8.      Upon information and belief, during the Relevant Time Period, Futro

managed the Defendant law firm of Futro & Associates, P.C. (hereinafter "Futro &

Associates").

9.      Upon information and belief, Futro currently still manages Futro & Associates.

10.      During the Relevant Time Period, all of the Defendants in this action shared office space in the same building in Denver, Colorado.

11.      During the Relevant Time Period, Defendants were involved in stock transactions with Plaintiffs in Illinois and Colorado.

12.      During the Relevant Time Period, Defendants perpetrated a fraud related to the transactions on Plaintiffs.

13.      This Court has jurisdiction over this action pursuant to §22(a) of the Securities Act [15 U.S.C. § 77v(a)] and §27 of the Securities Exchange Act [15 U.S.C. §78(aa)] and Title 28 U.S.C. §1331.  Defendants directly and indirectly made use of the mails and of the means and instrumentalities of interstate commerce in connection with the acts, practices and courses of business described in this *Complaint*.

14.      Venue is proper because many of the transactions, acts, practices, _____ of businesses, and illegal conduct occurred within the jurisdiction of the District of Colorado.

## FACTUAL ALLEGATIONS

### The U.S. MedSys Stock Transactions

15.      U.S. MedSys Corporation (hereinafter "MedSys") is a publicly traded company that describes itself as a network marketing and distributing organization, which provides medical technology and support services to the healthcare industry.

16.     From at least September 2004 until January 2005, MedSys' office was located in the same Denver Colorado office space shared by Defendants.

17.     At certain points during that time, Futro served as Chairman of the Board, Director, Chief Executive Officer, Chief Financial Officer, President, and Treasurer of MedSys. Futro held several of those positions at once.

18.     Rangeley held a large block of stock in MedSys during the Relevant Time Period.

19.     In September 2004, negotiations between Plaintiffs and Defendants for the sale of a portion of Rangeley's MedSys stock began.

20.     Futro and Futro & Associates were involved in those negotiations on behalf of Rangeley.

21.     During the negotiations, Defendants made phone calls to Illinois and sent correspondence to Illinois.

22.     The MedSys stock being offered to Plaintiffs was "restricted," such that any public market resale by Plaintiffs would require either registration or compliance with Securities and Exchange Commission Rule 144 (hereinafter "Rule 144").

23.     during the negotiations, the implication to Plaintiffs of the restricted nature of the MedSys stock was discussed and, as a result, the parties specifically negotiated a promise to register the shares.

24.     One requirement of Rule 144 is a one-year holding period.

25.     It was important to Plaintiffs that they not be restricted for a year in their ability to resell into the public market any MedSys stock that they purchased from Rangeley.

26.     To satisfy Plaintiffs' desire to avoid the Rule 144 one-year holding period and to induce Plaintiffs into purchasing the stock, Futro promised Plaintiffs that he, as an officer and direction of MedSys, would cause MedSys to register for resale the stock Plaintiffs purchased.

27.     To satisfy Plaintiffs' desire to avoid the Rule 144 one-year holding period and to induce Plaintiffs into purchasing the stock, Rangeley promised Plaintiffs that, as an affiliate of MedSys, it would cause MedSys to register for resale the stock Plaintiffs purchased.

28.     To satisfy Plaintiffs' desire to avoid the Rule 144 one-year holding period and to induce Plaintiffs into purchasing the stock, Futro & Associates conveyed to Plaintiffs Futro's and Rangeley's promises that they would cause MedSys to register for resale the stock Plaintiffs purchased.

29.     By making such representations to Plaintiffs, which they knew at the time were untrue, Futro & Associates substantially assisted Futro and Rangeley in selling Rangeley's MedSys stock to Plaintiffs.

30.     Before Plaintiffs purchased any MedSys stock held by Rangeley, Futro committed to writing, in three separate letters, the promise that MedSys would register for resale any MedSys stock Plaintiffs purchased.

31.     Specifically, Futro promised Grace Brothers that:

> Subject to consummation of your transaction with Rangeley Corporation, please be advised that U.S. MedSys Corp. has agreed to list you as a selling shareholder of both the 286,000 shares you intend to purchase and the 286,000 shares underlying the option (an aggregate of 572,000 sheares) in a registration statement that the company has committed to file on behalf of approximately 15 other selling shareholders who

invested in a re cent private placement offering by the
company.  We expect to file the registration stateement in late
October or early November of this year.

32.     Futro's written promise to Grace Brothers was detailed in a letter dated

September 29, 2004, which was signed by Futro on behalf of MedSys and was addressed

to Grace Brothers in Illinois.  A true and correct copy of that letter is attached hereto as

Exhibit A.

33.     In two more letters, Futro also promised the Wirtz and Callahan Trusts that:

Subject to consummation of your transaction with Rangeley
Corporation, please be advised that U.S. MedSys Corp. has
agreed to list you as a selling shareholder of both the 28,750
shares you intended to purchase and the 28,750 shares
underlying the option (an aggregate of 57,500 shares) in a
registration statement that the company has committed to file
on behalf of approximately 15 other selling shareholders who
invested in a recent private placement offering by the
company.  We expect to file the registration statement in late
October or early November of this year.

34.     Futro's written promise to the Wirtz and Callahan Trusts was detailed in two

letters dated September 24, 2004, which were signed by Futro on behalf of MedSys and

were addressed to the Wirtz and Callahan Trusts in Illinois.  True and correct copies of

these letters to the Wirtz and Callahan Trusts are attached respectively here to as Exhibits

B and C.

35.     Futro's promise, as detailed in his letters to Plaintiffs, was integral to

Plaintiffs' decision to purchase MedSys stock.

36.     Plaintiffs would not have purchased Rangeley's MedSys stock without

Defendants' assurances that the stock would be registered for resale.

37.     Upon information and belief, Defendants did not intend to register for resale the MedSys stock Plaintiffs purchased as Defendants had represented.

38.     Upon information and belief, at the time Defendants promised Plaintiffs that the MedSys stock they purchased would be registered for resale, Defendants were aware of facts in existence at that time that they sho8uld have known would make it impossible for them to keep such a promise.

39.     After being assured by Defendants that the MedSys stock Plaintiffs purchased would be registered for resale in a registration statement filed in late October or early November of 2004, Plaintiffs each entered into separate stock purchase agreements (collectively the "SPA's"), which were drafted by Futro & Associates and signed on behalf of Rangeley by Futro himself.

40.     A true and correct copy of the September 29, 2004 SPA that Grace Brothers entered into is attached hereto as Exhibit D.

41.     A true and correct copy of the September 29, 2004 SPA that the Wirtz Trust entered into is attached hereto as Exhibit E.

42.     A true and correct copy of the September 29, 2004 SPA that the Callahan Trust entered into is attached hereto as Exhibit F.

43.     Pursuant to the SPA that Grace Brothers entered into, Grace Brothers purchased $500,500.00 worth of stock and an option to purchase another $500,500.00 worth of additional stock in MedSys.

44.     Pursuant to the SPA that the Wirtz and Callahan Trusts entered into, those trusts each purchased $50,312.50 worth of stock and an option to purchase another $50,312.50 worth of additional stock in MedSys.

45.     Defendants' promise that the stock Plaintiffs purchased would be registered for resale was memorialized in each SPA.

46.     Article V, Section 5.01 of all three SPA's provides:

> Registration of Shares for Resale by Purchaser.  The Seller is an Affiliate of [U.S. MedSys], and shall cause [U.S. MedSys] to list the Purchaser as a selling shareholder and register the shares for resale by the Purchaser on a registration statement to be filed under the Securities Act of 1933, as amended.  The Seller shall cause [U.S. MedSys] to file the registration statement as soon as possible.

47.     On September 30, 2004, Futro executed an escrow agreement on Rangeley's behalf regarding the options purchased by the Wirtz and Callahan Trusts.

48.     A true and correct copy of the option escrow agreement for the Wirtz and Callahan Trusts is attached hereto as Exhibit G.

49.     On October 1, 2004, Futro executed an escrow agreement on Rangeley's behalf regarding the option Grace Brothers purchased.

50.     A true and correct copy of the Grace Brothers option escrow agreement is attached hereto as Exhibit H.

51.     The option escrow agreements state that the MedSys shares subject to Plaintiffs' options are being held by Crowley, Barrett & Karaba, Ltd. as the "Escrow Agent."

52.     Crowley Barrett & Daraba, Ltd. is located in Cook County, Illinois.

53.     At the time of the filing of this Complaint, the MedSys stock subject to the Plaintiffs' option is still being held in escrow in Cook County Illinois.

**The Failure to Register the MedSys Stock for Resale**

54.     Between the time the SPA's were executed and May 6, 2005, the price of MedSys stock was higher than the price Plaintiffs paid for the MedSys stock they purchased from Rangeley.

55.     While Plaintiffs paid $1.00 per share for MedSys stock, that stock was selling higher than that at different points after the SPA was executed.

56.     In October and November of 2004, MedSys stock was selling as high as $3.12 and $2.61 per share.

57.     However, Plaintiffs could only sell their MedSys stock into the public market and take advantage of this gain if MedSys registered Plaintiffs' stock for resale.

58.     The registration statement was not filed in late October 2004.

59.     In early November 2004, Grace Brothers' attorney, Evelyn Arkebauer, placed a call from Illinois to Futro & Associates, who were also acting as MedSys' attorneys at that time.  During that call, Ms. Arkebauer asked Troy Young, an attorney at Futro & Associates who had also represented Rangeley during the MedSys transactions, when MedSys would be registering the stock Plaintiffs purchased.

60.     On or about November 4, 2004, Mr. Young responded to Ms. Arkebauer's inquiry by informing her that the registration statement would be filed in "another week or so."  He further indicated that the delay was connected to a delay in filing MedSys' 10-Q.

61.     While MedSys filed a 10-Q on November 22, 2004, no registration statement was filed in November 2004.

62.     Sometime in November or December 2004 Futro was replaced as both the Chief Executive Officer and Chief Financial Officer of MedSys.

63.     On January 20, 2005, MedSys announced in a filing with the United States Securities and Exchange Commission (the "SEC") that it had relocated its office from the office it had shared with Defendants to an office in New Jersey.

64.     On February 2, 2005, Elmer M. Walsh, the attorney for the Wirtz and Callahan Trusts, sent a facsimile to Mr. Young regarding the yet-to-be-filed registration statement.

65.     In that facsimile, Mr. Walsh asked Mr. Young whether the registration statement had been filed and, if not, when it would finally be filed.

66.     A true and correct copy of Mr. Walsh's February 2, 2005 facsimile to Mr. Young is attached hereto as Exhibit I.

67.     Then, in a February 22, 2005 SEC filing, MedSys revealed that it was being investigated by the SEC.

68.     In February of 2005, Defendants continued to assure Plaintiffs that MedSys would file the registration statement  so that Plaintiffs Could resell their MedSys stock without the restrictions of Rule 144.

69.     In order to prevent Plaintiffs from investigating and uncovering the fact that Defendants would not be filing the registration statement as had been represented, Futro and Rangeley enticed Plaintiffs with additional MedSys stock in February of 2005.

70.     In March 2005, Futro again attempted to prevent Plaintiffs from uncovering Defendants' intentions with respect to the registration statement by further enticing Plaintiffs with additional MedSys stock.

71.     On or about March 28, 2005, Ms. Arkebauer asked Mr. Young, via telephone call from Illinois, why the registration statement had not yet been filed.

72.     At that time, Mr. Young refused to tell Ms. Arkebauer why the registration statement had not been filed.

73.     By mid-April of 2005, Plaintiffs had still not received the additional MedSys shares Futro promised to them in March.

74.     On or about April 13, 2005, Ms. Arkebauer left a voicemail for Troy Young asking about Plaintiffs' additional MedSys shares and insisting that the registration statement be filed immediately.

75.     Mr. Young never responded to Ms. Arkebauer's demand that the MedSys stock be registered immediately.

**Current Events and the Federal Government's Investigation**

76.     On May 9, 2005, a few months after announcing that it was under SEC investigation, MedSys announced that Futro had resigned his remaining positions at MedSys.

77.     Futro was provided with a severance package at the time he resigned, which provided him with a lump-sum payment of three months severance pay.

78.     MedSys did not explain why Futro had resigned his positions at that company.

79.     In the same May 9, 2005 press release, MedSys also announced that Rangeley sold its remaining block of MedSys stock for approximately $0.11 per share.

80.     At the time Rangeley Sold its remaining block of MedSys stock, the stock was actually trading at $0.70 per share.

81.     After Rangeley sold its remaining block of MedSys stock at $0.11 per share, the price of MedSys stock fell.

82.     On September 13, 2005, MedSys was served with a search warrant issued by a Magistrate Judge for the United States District Court for the District of New Jersey, together with a subpoena for documents and testimony before a federal grand jury.

83.     Upon information and belief, the federal grand jury's investigation of MedSys concerns the trading activity of MedSys stock.

84.     On September 15, 2005, the Federal Bureau of Investigation ("FBI") confirmed that FBI agents executed a search warrant at Defendants' shared offices.

85.      information and belief, as many as 20 FBI agents searched Defendants' Law Office.

86.     Upon information and belief, during the FBI search, the FBI seized Futro & Associates computers and records.

**Plaintiffs' Damages**

87.     Subsequent to the sale of Rangeley's remaining interests in MedSys, the value of MedSys stock sunk as low as $0.20 per share, a price substantially lower than the $1.00 per share that Plaintiffs paid for their MedSys stock.

88.     Furthermore, when Rangeley sold its remaining interest in MedSys for $0.11 per share that stock was trading at $0.70 per share.

89.     When Futro resigned from MedSys and sold Rangeley's remaining interest in the company, MedSys had still not registered Plaintiffs' MedSys stock for resale.

90.     Because no registration statement was filed, Plaintiffs were unable to sell their MedSys shares into the public market before the value of that stock decreased.

91.     Upon information and belief, during the negotiations with Plaintiffs, Defendants knew of the facts that would later give rise to the government investigations

they are involved in today.  Those facts either made Defendants aware or should have made Defendants aware that MedSys stock Plaintiffs purchased would not be able to be registered.

92.     Plaintiffs have incurred damages in the approximate amount of $750,000.00 as a result of Defendants' actions.

## COUNT I
### (Violation of the Federal Securities Laws)

93.     Plaintiffs refer to and incorporate by reference each and every allegation contained in Paragraphs 1 through 92 above, as if fully set forth herein.

94.     During the negotiations with Plaintiffs, Futro and Rangeley knew that MedSys was not going to register for resale the stock Plaintiffs purchased.

95.     During the negotiations with Plaintiffs, Futro and Rangeley knew that they were not going to cause MedSys to register for resale the stock Plaintiffs purchased.

96.     Futro and Rangeley violated  §22(a) of the Securities Act [15 U.S.C. § 77v(a)] and §27 of the Securities Exchange Act [15 U.S.C. §78(aa)] and Title 28 U.S.C. §1331. Defendants directly and indirectly made use of the mails and of the means and instrumentalities of interstate commerce in connection with the acts, practices and courses of business described in this *Complaint*

97.     As a result of the conduct of Futro and Rangeley, Plaintiffs incurred damages in the approximate amount of $750,000.00.

WHEREFORE, Plaintiffs respectfully request that this Court enter an order:

a.    requiring Futro and Rangeley to reimburse Plaintiffs for the damages they incurred as a result of the conduct of Futro and Rangeley, plus interest;

b.    requiring Futro and Rangeley to pay the reasonable fees and expenses of Plaintiffs' attorneys in bringing this action;

c.    requiring Futro and Rangeley to pay the costs Plaintiffs incur in bringing this action; and

d.    providing for such other and further relief as is appropriate under the circumstances.

## COUNT II
### (Violation of the Colorado Securities Laws)

98.    Plaintiffs refer to and incorporate by reference each and every allegation contained in Paragraphs 1 through 97 above, as if fully set forth herein.

99.    At the time Defendants engaged in the negotiations with Plaintiffs, Futro was a controlling person of Rangeley by virtue of his ownership interest in that company and his position as president and director of that company.3

100.    As a controlling person of Rangeley , a primary violator of the Illinois??? Securities Laws, Futro himself violated the Colorado Securities Law _____.

101.    As a result of Futro's conduct Plaintiffs incurred damages in the approximate amount of $750,000.00.

WHEREFORE, Plaintiffs respectfully request that this Court enter an order:

a.      requiring Futro and Rangeley to reimburse Plaintiffs for the damages they incurred as a result of the conduct of Futro and Rangeley, plus interest;

b.      requiring Futro and Rangeley to pay the reasonable fees and expenses of Plaintiffs' attorneys in bringing this action;

c.      requiring Futro and Rangeley to pay the costs Plaintiffs incur in bringing this action; and

d.      providing for such other and further relief as is appropriate under the circumstances.

## <u>COUNT III</u>
### (Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act Against All Defendants)

102.    Plaintiffs refer to and incorporate by reference each and every allegation contained in Paragraphs 1 through 101 above, as if fully set forth herein.

103.     Defendants violated the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et. seq.,* when they falsely promised Plaintiffs that they would register for resale the MedSys stock Plaintiffs would be purchasing.

104.    Defendants intended that Plaintiffs would rely on this false promise.

105.    Defendants' deception occurred during conduct involving trade and commerce.

106.    As a result of Defendants' conduct, Plaintiffs incurred damages in the approximate amount of $750,000.00.

WHEREFORE, Plaintiffs respectfully request that this Court enter an order:

     a.     requiring Futro and Rangeley to reimburse Plaintiffs for the damages they incurred as a result of the conduct of Futro and Rangeley, plus interest;

     b.     requiring Futro and Rangeley to pay the reasonable fees and expenses of Plaintiffs' attorneys in bringing this action;

     c.     requiring Futro and Rangeley to pay the costs Plaintiffs incur in bringing this action; and

     d.     providing for such other and further relief as is appropriate under the circumstances.

## COUNT IV
### (Violation of the Colorado Consumer Protection Act Against All Defendants)

107.    Plaintiffs refer to and incorporate by reference each and every allegation contained in Paragraphs 1 through 106 above, as if fully set forth herein.

108.    Defendants violated the Colorado Consumer Protection Act, C.R.S.A. § 6-1-101 *et. seq.,* when, in the course of their business, vocation or occupation, they failed to disclose to Plaintiffs during the MedSys stock transactions that they were not going to register for resale the MedSys stock Plaintiffs would be purchasing.

109.    Defendants did not disclose this information in order to induce Plaintiffs into purchasing MedSys stock.

110.    Defendants' conduct was in bad faith because it was fraudulent, willful, knowing and intentional.

111.    Defendants' conduct significantly impacted the public.

112.    As a result of Defendants' conduct, Plaintiffs incurred damages in the approximate amount of $750,000.00.

WHEREFORE, Plaintiffs respectfully request that this Court enter an order:

a.    requiring Futro and Rangeley to reimburse Plaintiffs for the damages they incurred as a result of the conduct of Futro and Rangeley, plus interest;

b.    requiring Futro and Rangeley to pay the reasonable fees and expenses of Plaintiffs' attorneys in bringing this action;

c.    requiring Futro and Rangeley to pay the costs Plaintiffs incur in bringing this action; and

d.    providing for such other and further relief as is appropriate under the circumstances.

## COUNT V
### (Common Law Fraud Against All Defendants)

113.    Plaintiffs refer to and incorporate by reference each and every allegation contained in Paragraphs 1 through 106 above, as if fully set forth herein.

114.     During the negotiations with Plaintiffs, Defendants made false statements of material fact concerning their intention to register for resale the MedSys stock Plaintiffs would be purchasing.

115.    Defendants knew when these statements were made that they were false.

116.    Defendants made these statements in order to induce Plaintiffs to purchase MedSys stock.

117.   Plaintiffs entered into the SPA's in reliance upon the fact that Defendants intended to register for resale the stock Plaintiffs purchased.

118.   As a result of Defendants' conduct, Plaintiffs incurred damages in the approximate amount of $750,000.00.

WHEREFORE, Plaintiffs respectfully request that this Court enter an order:

a.   requiring Futro and Rangeley to reimburse Plaintiffs for the damages they incurred as a result of the conduct of Futro and Rangeley, plus interest;

b.   requiring Futro and Rangeley to pay the reasonable fees and expenses of Plaintiffs' attorneys in bringing this action;

c.   requiring Futro and Rangeley to pay the costs Plaintiffs incur in bringing this action; and

d.   providing for such other and further relief as is appropriate under the circumstances.

Respectfully submitted this 10th day of May, 2006.

ROBERT T. McALLISTER, P.C.

/s Robert T. McAllister
Robert T. McAllister
455 Sherman Street, Suite 310
Denver, CO 80203
(720) 570-8892
*Attorney for* Grace Brothers, Ltd., Benedicte M. Wirtz, as
Trustee of Benedicte M. Wirtz Declaration of Trust Dated
10/26/94, and Richard R. Callahan Jr., as  Trustee of Richard
R. Callahan Jr. Declaration of Trust Dated 10/26/94

Certificate of Service

I hereby certify that on this 10th day of May, 2006.  A true and correct copy of the forgoing was filed and served via ECF.

/s Sarah Culver